1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTA GREEN,<br><br>     Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social<br>Security,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

   Case No. EDCV 05-1125-OP

   MEMORANDUM OPINION AND
   ORDER

   The Court[2] now rules as follows with respect to the three disputed issues

listed in the Joint Stipulation ("JS").[3]

---

  [1]  Michael J. Astrue, who was sworn in as the Commissioner of the Social
Security Administration on February 12, 2007, is substituted as the Defendant
pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

  [2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (See Dkt. Nos. 9, 10,
20.)

  [3]  As the Court advised the parties in its Case Management Order, the
decision in this case is being made on the basis of the pleadings, the
Administrative Record ("AR"), and the JS filed by the parties.  In accordance with
Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined
which party is entitled to judgment under the standards set forth in 42 U.S.C. §
405(g).

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1.   Whether the ALJ properly considered the opinions of Plaintiff's treating psychiatrist and psychologist;

2.   Whether the ALJ made proper credibility findings; and

3.   Whether the ALJ properly considered the observations of the lay witnesses.

(JS at 3.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /

/ / /

2

1

**III.**

2

**DISCUSSION**

3

A.   **Reversal Is Not Warranted Based on the ALJ's Alleged Error with**

4

    **Respect to the Opinions of Plaintiff's Treating Psychiatrist and**

5

    **Psychologist.**

6

       The ALJ found that Plaintiff had the medically determinable severe

7

impairment of depression.  (AR at 16.)  Plaintiff contends the ALJ erred because

8

he rejected the opinions of Plaintiff's treating psychiatrist, Dr. Roberto Carbugao,

9

and treating psychologist, Larry Havert, Ph.D., without providing specific and

10

legitimate reasons for doing so.  (JS at 4-6.)  Specifically, Plaintiff claims the ALJ

11

failed to discuss or consider clinical notes of Dr. Cabugao and the opinion that

12

Plaintiff had moderate impairments in the abilities to maintain attention and

13

concentration for extended periods, make work related decisions, ask questions or

14

request assistance, respond appropriately to work place changes, and the ability to

15

set realistic goals or make plans independently of others.  (Id.; AR at 364-65.)  Dr.

16

Cabugao also opined that Plaintiff had marked impairments in the abilities to

17

perform activities within a schedule, maintain regular attendance, be punctual,

18

sustain an ordinary routine without special supervision, and to work in

19

coordination with or in proximity to others without being distracted by them.  (AR

20

at 364-65.)  Plaintiff also contends the ALJ failed to consider Plaintiff's Global

21

Assessment of Functioning ("GAF") scores determined by Drs. Cabugao and

22

Havert to be 45 and 38, respectively.  (JS at 5.)

23

       It is well-established in the Ninth Circuit that a treating physician's

24

opinions are entitled to special weight, because a treating physician is employed to

25

cure and has a greater opportunity to know and observe the patient as an

26

individual.  McAllister v. Sullivan, 880 F.2d 1086, 1089 (9th Cir. 1989).  "The

27

treating physician's opinion is not, however, necessarily conclusive as to either a

28

physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881

3

1    F.2d 747, 751 (9th Cir. 1989) (<u>citing</u> <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62

2    & n.7 (9th Cir. 1989)).  The weight given a treating physician's opinion depends

3    on whether it is supported by sufficient medical data and is consistent with other

4    evidence in the record.  <u>See</u> 20 C.F.R. § 404.1527(d)(2).  If the treating

5    physician's opinion is uncontroverted by another doctor, it may be rejected only

6    for "clear and convincing" reasons.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir.

7    1995); <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating

8    physician's opinion is controverted, it may be rejected only if the ALJ makes

9    findings setting forth specific and legitimate reasons that are based on the

10   substantial evidence of record.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir.

11   2002); <u>Magallanes</u>, 881 F.2d at 751; <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th

12   Cir. 1987).

13          On April 24, 2003, Dr. Cabugao completed a check-off mental "Work

14   Capacity Evaluation" form.  (AR at 364-65.)  This form was thoroughly discussed

15   in a decision by an ALJ who previously heard Plaintiff's matter (<u>id.</u> at 27-28), and

16   that decision itself was specifically incorporated by reference into the decision at

17   issue herein.  (AR at 17 ("Medical exhibits one through sixteen . . . are

18   incorporated by reference as to their analysis and content from the prior

19   decision.").)  In that prior decision, the ALJ gave Dr. Cabugao's findings "no

20   probative weight."  (<u>Id.</u> at 28.)  He noted that the form appeared to be no more

21   than a compilation of the Plaintiff's complaints, and even with the exaggerated

22   check-off form, Plaintiff still could perform routine, repetitive, non-public tasks

23   according to the vocational expert.  (<u>Id.</u>)  The prior ALJ also concluded that the

24   form was unsupported by anything in the record, based solely on Plaintiff's

25   subjective complaints, not based on a current mental status examination, and

26   failed to make any comment on Plaintiff's prolonged absence of treatment or its

27   coincidental resumption.  (<u>Id.</u>)  To the extent that the form did not contain an

28   explanation for Dr. Cabugao's conclusions, the ALJ may properly reject the

4

assessment.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases of their conclusions); see also Thomas, 278 F.3d at 957 (holding that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Accordingly, the ALJ provided specific and legitimate reasons for rejecting the opinions of Dr. Cabugao, the analysis which was incorporated by the decision at issue herein.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

With respect to Dr. Havert, the prior ALJ also discounted his opinion because the records documented that Plaintiff had stopped all mental health contact on June 4, 2001, and did not resume until April 9, 2003.  (AR at 28.)  The ALJ noted that Plaintiff had been without medications for a period of at least six months, yet no significant deterioration was documented by Dr. Havert regarding the prolonged absence of treatment.  (Id.)  Again, this is a specific and legitimate reasons for rejecting Dr. Havert's opinion.  Tonapetyan, 242 F.3d at 1149.

Plaintiff also complains that the ALJ failed to properly consider the GAF scores of 45 and 38[4] assessed by Drs. Cabugao and Havert, respectively.  (JS at 5.) GAF scores reflect the "clinician's judgment of the individual's overall level of functioning and include[] psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its

_____

[4] A GAF score of 45 falls into the "serious symptoms" category, described as "(suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Ass'n ed., 4th ed. 2000).  A score of 38 is described as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  (Id.)

1   impact, and in predicting outcome." <u>Diagnostic and Statistical Manual of Mental</u>

2   <u>Disorders</u> 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000).  Moreover, the

3   Social Security regulations do not require an ALJ to take the GAF score into

4   account in determining the extent of an individual's disability.  While the score

5   may help the ALJ assess the claimant's ability to work, it is not essential, and the

6   ALJ's failure to rely on the GAF does not constitute an improper application of

7   the law.  <u>Howard v. Comm'r of Soc. Sec.</u>, 276 F.3d 235, 241 (6th Cir. 2002)

8   ("While a GAF score may be of considerable help to the ALJ in formulating the

9   [residual functional capacity ("RFC")], it is not essential to the RFC's accuracy.

10  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone,

11  does not make the RFC inaccurate.").

12      Here, as previously discussed, the prior ALJ properly discounted the

13  findings of Dr. Cabugao and Dr. Havert and that analysis was specifically

14  incorporated by reference in the decision at issue herein.  Accordingly, the Court

15  finds no error in regard to the current ALJ's failure to specifically mention either

16  doctor's GAF findings.  Nor does it find any error regarding the ALJ's failure to

17  specifically mention or reject any other findings of those two doctors.

18  **B.    <u>The ALJ Properly Evaluated Plaintiff's Credibility</u>.**

19      Plaintiff contends that in finding her not entirely credible, the ALJ failed to

20  discuss Plaintiff's testimony, failed to identify what portions of Plaintiff's

21  testimony he felt were not credible, and failed to identify any specific evidence

22  that undermined that testimony.  (JS at 8.)  Plaintiff also claims that the reasons

23  for rejecting her testimony were not clear and convincing.  (<u>Id.</u>)  Finally, she

24  claims that the only evidence discussed by the ALJ with respect to credibility was

25  the lack of supporting medical records and that this method of credibility

26  assessment has been rejected by the Ninth Circuit in <u>Light v. Soc. Sec. Admin.</u>,

27  119 F.3d 789, 792 (9th Cir. 1997).  (JS at 9.)

28      An ALJ's credibility finding must be properly supported by the record and

6

sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-47  (9th Cir. 1995).  An ALJ may properly consider "testimony from physicians . . .  concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  <u>See, e.g.</u>, <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).  An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors;" "[t]ype, dosage, effectiveness, and adverse side-effects of any medication;" "[t]reatment, other than medication;" "[f]unctional restrictions;" "[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms.  <u>Bunnell</u>, 947 F.2d at 346-47 (9th Cir. 1991) (en banc) (citations omitted); <u>see also</u> Soc. Sec. Ruling 96-7p;[5] 20 C.F.R. 404.1529 (2005); <u>Morgan v. Comm'r of Soc. Sec.</u>, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in

---

[5]  The Ruling lists factors to be considered such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. Ruling 96-7p.

1   the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may

2   properly rely on weak objective support, lack of treatment, daily activities

3   inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60

4   F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only

5   conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750

6   (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack

7   of side effects from prescribed medication).

8          The Court agrees with the Commissioner that the ALJ set forth sufficient

9   reasons for finding Plaintiff not entirely credible, including:  inconsistencies in her

10  responses to the two daily activities questionnaires she completed on May 22,

11  1999, and June 14, 2000; inconsistencies between her statements in the second

12  questionnaire and the objective medical record; inconsistencies between her

13  statements in the second questionnaire and the statement submitted by her

14  husband; and the fact that she claimed she had no earnings or income since 1998

15  but earning records revealed she earned $18,932.00 in 2003.  (AR at 18-19.)  The

16  ALJ also mentioned the fact that Plaintiff showed "no apparent anxiety at the

17  hearing," and "expressed herself well and did not appear uncomfortable even

18  during the highly stressful environment of the hearing."  (AR at 17.)  Although an

19  ALJ is not free to accept or reject an individual's complaints solely on the basis of

20  personal observations, such observations should be considered in the overall

21  evaluation of credibility.  Soc. Sec. Ruling 96-7p; Drouin v. Sullivan, 966 F.2d

22  1255, 1259 (9th Cir.1992).

23         Accordingly, the Court finds that the ALJ's adverse credibility

24  determination was proper because (a) the discussion of Plaintiff's credibility

25  reflects consideration of the factors set forth in Social Security Ruling 96-7p and

26  was not based solely on his personal observations, and (b) the reasons were

27  supported by substantial evidence and were sufficiently specific to permit the

28  Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective

1 testimony.

2 **C.    The ALJ Properly Considered the Observations of the Lay Witnesses.**

3      Plaintiff contends the ALJ failed to provide sufficient reason for

4 disregarding the testimony of two lay witnesses. (JS at 12.)

5      First, in a third party questionnaire completed by Plaintiff's husband, Chris

6 Scott, on May 22, 1999, Mr. Scott stated that his wife needed to be told when to

7 bathe and spends most of her day lying down and sleeping. (AR at 190-95.) He

8 also stated that she had no trouble sleeping, and was able to cook, shop, and do

9 laundry without assistance. (Id.) According to Mr. Scott, Plaintiff left the house

10 about four times a day, had a valid driver's license, read the Bible, went to church,

11 and was depressed since her children were removed from the home. (Id.) The

12 ALJ did not reject Mr. Scott's statements. Indeed, he noted that Mr. Scott's

13 statements were consistent with the findings in the decision. (Id. at 18.)

14 Therefore, Plaintiff's claim to the contrary lacks merit.

15      On June 19, 2000, the second lay witness, Plaintiff's grandmother, Lelia

16 Walker, completed a third party questionnaire that Plaintiff contends corroborates

17 Plaintiff's testimony regarding disability and was improperly disregarded without

18 reasons germane to the witness. (JS at 11-12.) Ms. Walker stated that Plaintiff

19 stays in her room and sleeps, does not bathe herself, talks to herself, and acts like

20 she is having a conversation with another person when no one else is there. (AR

21 at 214-19.) The ALJ also noted that Ms. Walker reported that she cared for

22 Plaintiff by cooking and dressing her. (Id. at 18, 214-19.)

23      Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition to

24 medical evidence, the Commissioner "may also use evidence from other sources

25 to show the severity of [an individual's] impairment(s) and how it affects [her]

26 ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by

27 friends and family members in a position to observe a claimant's symptoms and

28 daily activities have routinely been treated as competent evidence." Sprague v.

1    <u>Bowen</u>, 812 F.2d 1226, 1232 (9th Cir. 1987).  This applies equally to the sworn

2    hearing testimony of witnesses (<u>see</u> <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th

3    Cir. 1996)), as well as to unsworn statements and letters of friends and relatives.

4    <u>See</u> <u>Schneider v. Comm'r of Soc. Sec. Admin.</u>, 223 F.3d 968, 974 (9th Cir. 2000).

5    If the ALJ chooses to reject such evidence from "other sources," he may not do so

6    without comment.  <u>Nguyen</u>, 100 F.3d at 1467.  The ALJ must provide "reasons

7    that are germane to each witness." <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir.

8    1993).

9        The ALJ is not relieved of his obligation to comment upon lay witness

10   testimony simply because he has properly discredited the Plaintiff's testimony.

11   To find otherwise would be based upon "the mistaken impression that lay

12   witnesses can never make independent observations of the claimant's pain and

13   other symptoms." <u>Id.</u>  Similarly, the mere fact that the lay witness is a relative

14   may not be a valid reason alone for rejecting lay witness testimony.  <u>Regennitter</u>

15   <u>v. Comm'r of Soc. Sec. Admin.</u>, 166 F.3d 1294, 1298 (9th Cir. 1999); <u>but see</u>

16   <u>Greger v. Barnhart</u>, 464 F.3d 968 (9th Cir. 2006) (the ALJ's consideration of the

17   claimant's prior girlfriend's close relationship with the plaintiff and desire to help

18   him as a possible reason for bias was a reason germane to that witness).

19       Here, the ALJ found Ms. Walker's statements entitled to "almost no

20   probative value" because they were not supported by i) the objective medical

21   records; ii) Plaintiff's own testimony; or iii) Mr. Scott's testimony.  (AR at 18.)

22   He also noted that because Ms. Walker had a financial interest in Plaintiff

23   receiving benefits, he found her statements biased.  (<u>Id.</u>)  Even if this last reason

24   for rejecting Ms. Walker's testimony standing alone would be improper, which

25   this Court declines to determine, the ALJ provided sufficient other reasons

26   germane to this witness for discounting her testimony and there was no legal error.

27

28                                      **IV.**

                                        10

1

## **<u>ORDER</u>**

2

    IT THEREFORE IS ORDERED that Judgment be entered affirming the

3

decision of the Commissioner, and dismissing this action with prejudice.

4

5

6

7

8

DATED:  April 29, 2008      _____

HONORABLE OSWALD PARADA
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11